# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

GEORGE ALSTON,

    Plaintiff,

    v.

CITY OF DARIEN, a municipality
and county seat of McIntosh
County, Georgia; DONNIE HOWARD,
individually and in his
capacity as Chief of the Darien
Police Department; ANTHONY
BROWN, individually and in his
capacity as a Police Officer
for the Darien Police
Department,

    Defendants.

CV 216-66

## ORDER

Pending before the Court are Plaintiff's George Alston and Defendants' City of Darien, Donnie Howard, and Anthony Brown ("Defendants") competing motions for partial summary judgment (Dkt. No. 23) and for summary judgment (Dkt. No. 22), respectively. The issues are fully briefed and ripe for review.

For the reasons stated below, the Defendants' Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

## FACTUAL BACKGROUND

While stationed on the shoulder of Interstate 95, Darien Police Officer Anthony Brown observed a white Mercedes with dark window tint traveling southbound. Dkt. No. 23-1 p. 2; Dkt. No. 22-5, 6:24-25, 7:1-2. Brown initiated a traffic stop for a suspected violation of O.C.G.A. § 40-8-73, which prohibits fixing of materials which reduce transmission or increase light reflectance through windows or windshields. Dkt. No. 22-5, 7:9-24. While approaching the car, Brown also noticed that the vehicle's license plate was partially obscured. Dkt. No. 22-6, 6:1-3. Brown asked the driver of the car, George Alston, to roll up his windows; Brown then checked the windows with a tint meter. Dkt. No. 23-1 p. 2. The windows were tinted more darkly than is permitted under Georgia law. Dkt. No. 22-5, 7:15-17.

Brown asked Alston for his license; Alston did not immediately comply, instead handing him an identification card from the Federal Law Enforcement Training Center (FLETC). Dkt. No. 23-1 p. 2. Brown then wrote Alston two citations: the first for an obstructed tag frame in violation of O.C.G.A. § 40-2-41, and the second for window tint violation under O.C.G.A. § 40-8-73. Dkt. No. 30. Alston signed only one of the two citations and then—according to Brown—said "[y]ou know, this is the second time you've done this fucking bullshit." Dkt. No. 22-5 66:16-25, 67:1-11.

AO 72A
(Rev. 8/82)

Brown commanded Alston to "[e]xit the vehicle" and told Alston he was under arrest. Dkt. No. 22-5, 50:15-19. According to Brown, Alston did not move, glaring at Brown instead. Dkt. No. 22-5, 50:21-23. Brown then drew his taser, pointed it at Alston's chest, and again commanded that Alston exit the vehicle. Dkt. No. 22-5, 11:1-12. Brown testified that the sole purpose of pointing his taser at Alston was because Alston did not immediately exit the vehicle when commanded to do so. Dkt. No. 22-5, 50:6-17.

Faced with the taser, Alston did exit the vehicle and was placed in handcuffs. Dkt. No. 22-5, 12:14-25. According to Alston, Alston immediately told Brown that the handcuffs were "too tight"—but Brown finished clamping and locking the handcuffs. Dkt. No. 22-4, 27:3-25, 28:1-5.

Alston was arrested. According to Brown, the sole purpose of Alston's custodial arrest was to take him to be fingerprinted. Dkt. No. 22-5, 21:25, 22:1-2. The Attorney General had previously designated window tint violations as an offense for which violators must be fingerprinted. Dkt. No. 22-1 p. 3. Brown had thereafter been instructed to effectuate this policy by his superior; Brown stated that he had been directed by the Chief of the Darien Police Department to bring in anyone who was cited for window tint violations. Dkt. No. 22-5, 22:5-10. Indeed, in his deposition, Darien Police Department Chief

.O 72A
Rev. 8/82)

Howard confirmed that he had made that instruction on the basis of a request by the Clerk of the McIntosh State Court. Dkt. No. 22-7, 32:5-12. The Clerk had been struggling to fill out paperwork as a result of the officers not making arrests for window tint violations, and had therefore requested that Chief Howard instruct his officers to arrest individuals for window tint violations. Dkt. No. 22-7, 32:7-35.

But Alston says that Brown arrested him for another reason. According to Alston, Brown told Darien Officer Robbie Gault—who arrived at the scene of the arrest shortly after Alston's arrest—that Brown made the arrest because of how Alston "acted in the car with his wife," and because Alston "was cussing [Brown] so I will call his job and have him fired." Dkt. No. 22-4, 28:11-17.

Gault was responsible for transporting Alston to the jail. It took three to four minutes to travel to the McIntosh County Jail, and then another two to three minutes before Gault could remove Alston's handcuffs. Dkt. No. 22-4, 30:17-19; 31:6-8.  As Gault drove Alston to the jail, Alston told Gault that his handcuffs were too tight and asked him to loosen them. Dkt. No. 22-6, 5:6-21. Alston says that Gault told him, "You're a big guy; he should have used two pair of cuffs; he shouldn't have done that." Dkt. No. 22-4, 31:16-17. When Gault took the cuffs off his hands, Alston noticed that his left hand was swollen and

\O 72A
Rev. 8/82)

his right hand was bleeding from a half-inch long gash. Dkt. No. 22-4, 33:14-22. Alston showed his injuries to jailor Tammy Skipper, who encouraged Alston to show his injuries to Brown's superior officer. Dkt. No. 22-4, 35:3-14. Gault's testimony, however, contradicted Defendant's assessment; he testified that Alston was not bleeding and only had "indentation of the skin" consistent with "normal use of a handcuff." Dkt. No. 22-6, 7:22-8:8. The booking sheet from the McIntosh County Jail, signed by Alston, indicated that Alston had no visible signs of "trauma or illness" or "pain [or] injury." Dkt. No. 22-1, Ex. B. And the records from Southeast Georgia Health Systems indicate that providers who examined Alston hours after his meeting with Brown noted neither bleeding nor contusions. Dkt. No. 22-1, Ex. C.

After his arrest and release from jail, Alston went to the Brunswick hospital, where X-rays were taken of his left hand. Dkt. No. 22-4, 45:15-20. At a May 15, 2014 follow-up appointment with Dr. Dunn, Alston's X-ray revealed a positive Tinel's sign in his left wrist, which Dr. Dunn diagnosed as indicative of an irritated radial sensory nerve. Dkt. No. 32-2, 11:1-8. Alston returned on June 5, 2014 reporting the same symptoms. Dkt. No. 32-2, 11:13-19. Alston again reported to the hospital on April 10, 2015, where Dunn performed an MRI, revealing arthritis and a full thickness tear of a connective ligament in Alston's wrist. Dkt. No. 32-2, 12:12-22. Now three years after the incident,

.O 72A
Rev. 8/82)

Alston continues to struggle with pressing the clutch of his motorcycle, performing yard work, and body building. Dkt. No. 22-4, 47:15-23, 48:8-12.

Plaintiff brings several claims under 42 U.S.C. § 1983 ("Section 1983") against Officer Anthony Brown, Chief Donnie Howard, and against the City of Darien alleging: (1) false arrest in violation of the Fourth Amendment, (2) excessive force in violation of the Fourth Amendment, and (3) liability of the City of Darien (Dkt. No. 1). He also alleges violations by Officer Brown and Chief Howard of Alston's First Amendment Rights and denial of a petition for redress. (Dkt. No. 1). Defendants moved for summary judgments on all claims. Dkt. No. 22. Plaintiff moves for partial summary judgment only on the claims of false arrest and excessive force. Dkt. No. 23.

## LEGAL STANDARD

The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion for summary judgment and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes demonstrate absence of any genuine issue of material fact. Taylor v. Espy, 816 F. Supp. 1553, 1556 (N.D. Ga. 1993) (citation omitted). If it shows that there is insufficient evidence supporting the nonmoving party's case, the moving party

.O 72A
Rev. 8/82)

has satisfied its burden. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

The burden then shifts to the nonmovant to demonstrate a genuine issue of material fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986). The nonmovant may meet this burden by showing that the record contains "supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Alternatively, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id</u>. at 1117. But should the nonmovant instead attempt to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

At the summary judgment stage, it is the Court's responsibility "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (quoting <u>Anderson</u>, 477 U.S. at 249 (1986)) (internal quotation marks omitted). When, as here, the parties have filed cross-

O 72A
ev. 8/82)

motions for summary judgment, the applicable Rule 56 standard is not affected. See Gerling Glob. Reinsurance Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233-34 (11th Cir. 2001). "[T]he facts are viewed in the light most favorable to the non-moving party on each motion." Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

## DISCUSSION

Plaintiff alleges that Defendants committed numerous violations of Section 1983. Plaintiff specifically makes a number of federal law claims against Brown and Howard in their official and individual capacities, in addition to seeking to hold the City of Darien liable for their actions. See generally Dkt. No. 1. In response, Defendants assert that qualified immunity protects them from the claims asserted against them in their individual capacities. Dkt. No. 22.

Plaintiff asserts that he is entitled to summary judgment on the claims of false arrest and of excessive force. Dkt. No. 23. Defendants assert they are entitled to summary judgment on all claims. Dkt. No. 22.

### A. Plaintiff's 42 U.S.C. § 1983 claims do not succeed

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a

reasonable person would have known." <u>Dalrymple v. Reno</u>, 334 F.3d 991, 994 (11th Cir. 2003). When properly applied, the doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To receive qualified immunity, a government official must prove he was "acting within his discretionary authority" at the time the alleged wrongful acts occurred. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003). An official may demonstrate that he was acting through his discretionary authority by establishing two things: first, that he "was performing a legitimate job-related function" and second, that he pursued this function "through means that were within his power to utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004). Once the Defendant demonstrates that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." <u>Cottone</u>, 326 F.3d at 1358.

Here, Officer Brown was acting within his discretionary authority as an officer when he placed Mr. Alston under arrest. <u>McClish v. Nugent</u>, 483 F.3d 1231, 1237 (11th Cir. 2007) (noting that an officer acts within his discretionary authority at the time of an arrest). The burden thus shifts to the plaintiff to

demonstrate that qualified immunity does not apply. <u>Terrell v. Smith</u>, 668 F.3d 1244, 1250 (11th Cir. 2012).

The Court asks two questions to determine whether a defendant is entitled to qualified immunity. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). The Court asks "whether plaintiff's allegations, if true, establish a constitutional violation." <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002). The Court also assesses whether the constitutional right at issue was "clearly established at the time of the alleged violation." <u>Harland</u>, 370 F.3d at 1264. A right is clearly established when it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Whittier v. Kobayashi</u>, 581 F.3d 1304, 1308 (11th Cir. 2009); <u>see also</u> <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). We therefore begin by analyzing whether Defendants violated Plaintiff's constitutional rights.

### 1. Plaintiff's false arrest claims do not succeed

Plaintiff argues that his arrest was made without probable cause. A warrantless arrest without probable cause violates the Constitution and serves as the basis of a Section 1983 claim. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004). But existence of probable cause at the time of the arrest

72A
v. 8/82)

is an absolute bar to a Section 1983 action for false arrest. Id. The Court must decide whether Defendants demonstrate, as a matter of law, that probable cause existed to arrest Alston.

Probable cause to arrest exists where an arrest is "objectively reasonable based on the totality of the circumstances." Id. (citing Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)). An arrest is objectively reasonable when the facts and circumstances "within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010). When determining whether an official is entitled to qualified immunity, however, the Court asks whether an officer had arguable—not actual—probable cause. Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997). Arguable probable cause to arrest exists if objectively reasonable officers in the same circumstances and possessing the same knowledge as the officer effectuating the arrest could have believed that probable cause existed. Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009).

The undisputed facts set forth in the record indicate that Defendants had arguable probable cause to believe that Plaintiff had committed the offenses for which Defendants made the arrest.

.O 72A
Rev. 8/82)

Here, there is no question that a reasonable officer would have believed that Alston violated the law by obscuring his license plate tag. And there is no question—nor do the parties dispute—that a reasonable officer could have believed that Alston violated the law by having windows tinted beyond what is legally permitted. In Georgia, a law enforcement officer is permitted to make a warrantless arrest if the "offense is committed in such officer's presence or within such officer's immediate knowledge." O.C.G.A. § 17-4-20(a)(2)(A). Officer Brown had personal knowledge of both offenses, and therefore possessed arguable probable cause to make an arrest.

Plaintiff contends, however, that his signing of one of the two citations eliminated Officer Brown's probable cause. In essence, he argues that once he signed the citation for his window tint violation, he effectively posted bond for his violation of O.C.G.A. § 40-8-73.1(b). Dkt. No. 23-1 p. 8. Therefore, Plaintiff asserts, some modicum of *additional* criminal activity or probable cause must have occurred for Officer Brown to have made a lawful arrest under the Fourth Amendment. Dkt. No. 23-2 p. 13. This argument fails to carry the day for two reasons.

First, assuming *arguendo* that Plaintiff is correct in the argument that he had indeed posted bond by signing a citation, he had not posted bond for both offenses. Plaintiff had signed

72A
/. 8/82)

one citation, but not both. As such, Plaintiff had not yet posted bond for the second alleged violation of Georgia law. Defendants therefore retained probable cause to make an arrest.

But second—and more fundamentally—signing a citation does not, in fact, eviscerate an officer's ability to make an arrest. "For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." Lee v. Ferrari, 284 F.3d 1188, 1195 (11th Cir. 2002). Here, those circumstances included guidance issued from the Attorney General and the policy of their own police department requiring Brown to bring Plaintiff in for fingerprinting.

Plaintiff cites to State v. Torres for the proposition that Officer Brown only has one chance to choose between issuing a citation and 660 S.E.2d 763, 765 (Ga. App. 2008). But this is not so. The court in State v. Torres held that once an offer has elected to issue a citation for a traffic offense, and the driver refuses to sign that citation, the officer cannot, under Georgia law, "change his mind" and instead make a custodial arrest. Id. First, it is worth noting that both the Supreme Court and the Eleventh Circuit have held that such state law limitations on an officer's authority to make arrests are not incorporated into the Fourth Amendment. Ducre v. Archer, 653 F. App'x 896, 897 (11th Cir. 2016); Virginia v. Moore, 555 U.S.

72A
v. 8/82)

164, 173-76 (2008) (rejecting an attempt to incorporate into the Constitution state law arrest limitations). But too, Georgia courts have clarified that the holding in Torres is far narrower than Plaintiff contends it to be. The Georgia Court of Appeals has clarified that Torres' holding merely requires that "once an officer decides to issue a citation, rather than arrest someone for certain traffic violations, the officer must explain that signing the citation does not mean acknowledgement of guilt and that the consequence of failing to sign the ticket is having to post a cash bond." Watkins v. Latif, 323 Ga. App. 306, 310 (2013). In other words, requiring that once an officer proceeds down the path of citation, he is then statutorily obligated to give explanations of what that citation means under Georgia law. Torres does not, as Plaintiff contends, stand for the proposition that the officer who has issued a citation is thereafter precluded from effectuating an arrest.

In fact, precedent more broadly supports the opposite of what Plaintiff contents. In Brock v. State, the Court held that OCGA § 17-4-23(a) "gives police the discretion to write a citation but does not preclude physical arrest." 196 Ga. App. 605, 606 (1990). And the court in King v. State held that O.C.G.A § 17-4-20 permits a police officer to make a warrantless arrest for a crime committed in his presence, including crimes—like the traffic violations in the present

case—that are misdemeanor offenses. 161 Ga. App. 382(1). Case law tends to confirm that officers have discretion to determine whether to issue a citation or make an arrest, and that the ability to make an arrest is not precluded in the case of minor traffic violations.

Nor will the Court embrace Plaintiff's contention that officers must irrevocably choose between citations and arrests in every case. If this Court were to require officers to conclusively choose between issuing a citation and effectuating an arrest, it would risk putting officers in danger. Imagine a detained individual becomes belligerent after being issued a citation. If the Court implemented the rule that Plaintiff proposes, an officer would be hamstrung; having issued the citation, he would now be powerless to use the power of the state to arrest the individual—even in an escalating, dangerous situation. Such a rule would be ill-advised.

Because Officer Brown witnessed the obscured tag and the unlawfully tinted window, he possessed arguable probable cause to effectuate an arrest. Alston's signing of a citation is immaterial to Officer Brown's possession of arguable probable cause to make an arrest. Because Officer possessed arguable probable cause, Plaintiff's Section 1983 claim fails. See Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990) ("The

existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest.").

## 2. Plaintiff's excessive force claims do not succeed

Plaintiff next argues that Officer Brown violated his Fourth Amendment right to be free from excessive force. Use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394 (1989). This Court's review centers on whether the force used by Officer Brown was objectively reasonable from the perspective of a reasonable officer on the scene. Graham, 490 U.S. at 396. The Eleventh Circuit has identified three factors to evaluate for determining if the force used by an officer in making an arrest was objectively reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Stephens v. DeGiovanni, 852 F.3d 1298, 1324 (11th Cir. 2017) (citing Vinyard, 311 F.3d at 1347).

The evidence in the light most favorable to Plaintiff shows that Officer Brown took Plaintiff's arms and applied handcuffs behind his back. Dkt. No. 22-4, 26:25, 27:1-2. Plaintiff complained to Officer Brown that the handcuffs were too tight, but Officer Brown tightened them further. Dkt. No. 22-4, 27:3-9. Plaintiff remained in handcuffs during the three to four minute ride to the jail, and then for an additional three to four

16

minutes after arriving. Dkt. No. 22-4, 30:17-19; 31:6-8. Plaintiff experienced swelling and bleeding from the cuffs rubbing against his skin, and was later diagnosed with a severed nerve that continues to give him discomfort and pain. Dkt. No. 22-4, 33:14-25, 34: 1-25.

The Court examines each of the three Graham factors in turn. Turning to the need for the application of force: this Court determined that Officer Brown had the authority to determine whether to issue a citation or to effectuate an arrest. Having chosen to make an arrest, Officer's Brown's "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. The Eleventh Circuit recognizes that an arrest carries with it some force and injury. See Nolin v. Isbell, 207 F.3d 1253, 1257-58 (11th Cir. 2000). Officer Brown was entitled to use a de minimis amount of force to effectuate an arrest.

Turning next to the amount of force used: Plaintiff's infraction was minor and Plaintiff did not pose an immediate threat. However, the situation was escalating; Plaintiff had not immediately followed two of Officer Brown's directions (to produce his license and to step out of the car) and had, in fact, cursed at Officer Brown. Dkt. No. 22-2 p 2-3. Officer Brown was entitled to employ only that quantum of force

17

reasonably necessary "to subdue and secure" Alston. See Lee, 284 F.3d at 1198. And he did so. Officer Brown only applied sufficient force to fasten handcuffs around Plaintiff's wrists.

And finally, examining the extent of the injury inflicted: looking at the facts in the light most favorable to the Plaintiff, Officer Brown used sufficient amount of force to cause Plaintiff pain and ongoing injury (in the form of damage to his radial nerve). Dkt. No. 1, ¶¶ 88, 89. But this Court has held that "painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal" Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002) (holding that handcuffing during arrest and transportation to the police station was not excessive force, even though the handcuffing aggravated a pre-existing injury and caused loosening of internal surgical hardware, displacement of a bone fragment, twenty-five subsequent surgeries, and ultimate amputation of the arm below the elbow); Gold v. City of Miami, 121 F.3d 1142 (holding that handcuffing for twenty minutes, resulting in skin abrasions and pain, was not excessive force); Nolin, 207 F.3d at 1257-58 (granting qualified immunity where officer shoved plaintiff into car, pushed knee into his back, held his head against a van, uncomfortably searched his groin area, and placed him in handcuffs, causing bruising).

72A
/. 8/82)

Defendants argue that this case is indistinguishable from Collins v. Ensley. 498 Fed. App'x 908 (11th Cir. 2012). In Collins, an officer applied handcuffs to effectuate an arrest for a misdemeanor crime. As a result of the routine handcuffing, Collins sustained injury to a ligament in his wrist and suffered from permanent, ongoing numbness in his hand as a result of the handcuffing. "Nevertheless," the Court said, "minimal force does not become excessive because severe or tragic results occurred." Id. at 913. The Court agrees that the amount of force and resulting injury in this case is indistinguishable from those in Collins, and therefore conclude that Officer Brown's use of force was not excessive and that Alston's constitutional rights were not violated.

Alston contends that he should be granted summary judgment because of spoliation of evidence. Dkt. No. 23-2. p. 10. Gault stated that his patrol vehicle video recorded Alston and Brown's interaction at the time that Alston would have been complaining about the pain from handcuffs. Dkt. No. 23-2 p. 10. And Chief Howard acknowledged that Gault's patrol vehicle had taken "a little bit of video," but he determined that the video did not show anything determinative either way. Dkt. No. 22-7, 11:3-9. Alston asks the court that a presumption be held in his favor and against the Defendants because "evidence has clearly been destroyed." Dkt. No. 23-2. p. 11.

The Court disagrees. Plaintiff is required to demonstrate that spoliated evidence is crucial to the movant's ability to prove his *prima facie* case; demonstrating that "the spoliated evidence would have been relevant to a claim or defense" is not enough. Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 736 F. Supp. 2d 1317, 1327-28 (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere); see also Floeter v. City of Orlando, 2007 WL 486633, at *6 (M.D. Fla. 2007) (missing emails may be relevant to Plaintiff's case but they were not critical and would have been cumulative). Here, it is not clear that there is spoliated evidence, and even so, Alston has been able to admit evidence—in the form of his own affidavit—that testifies to the same material as what would be on the video. In resolving Defendants' motion for summary judgment, this Court has viewed the evidence in the light most favorable to Alston, including his testimony that he complained to Officer Brown about the tightness of the handcuffs. The Court therefore does not need any video that may or may not exist, as it is not critical and would be cumulative.

**3. Qualified immunity shields Defendants from liability on either claim.**

In any event, even if the Court found that the amount of force used was unreasonable, qualified immunity would shield Defendant from liability. A government employee is entitled to a judgment of qualified immunity "unless the employee's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Morse v. Frederick, 551 U.S. 393, 429 (2007). Because the facts of this case are similar to Collins v. Ensley, 498 Fed. App'x 908 (11th Cir. 2012), Officer Brown would have been on notice that applying handcuffs in the course of arrest—even if that application of force later results in pain and nerve damage—is not unreasonable. And too, Officer Brown had arguable probable cause to effectuate an arrest. Because Officer Brown possessed arguable probable cause and did not exert unreasonable force in effectuating his arrest, Plaintiff has been unable to meet his burden of demonstrating that Officer Brown violated his constitutional rights. As such, Defendant would therefore be entitled to qualified immunity on Plaintiff's claims under 42 U.S.C. § 1983.

**B. Alston's claims for violation of his First Amendment rights do not succeed.**

Plaintiff brings several claims against Defendants Howard and Brown: against Brown are claims of "chilling speech by arrest" and "chilling speech by harassment," and against Howard

are claims of "chilling speech by intimidation" and "denial of petition for redress of grievances." The Court addresses each in turn.

Existence of probable cause to arrest Alston defeats a First Amendment claim of retaliatory arrest on the basis of constitutionally protected speech. Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002). Because this Court has previously determined that Officer Brown had probable cause to arrest Alston, Alston is barred from asserting claims for "chilling speech by arrest."

Turning to the claims for "chilling speech by harassment," the Court treats this as a claim for First Amendment retaliation. Retaliation exists when there is (1) constitutionally protected speech by the plaintiff; (2) retaliatory conduct by the defendant adversely affecting the protected speech, and (3) a causal connection between the first two elements. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

As Alston fails to satisfy either the second or the third elements, his claim therefore fails. First, Alston is not able to demonstrate retaliatory conduct by Brown adversely affecting protected speech. Alston plead in his complaint that Officer Brown retaliated against him for "complaints that were made against [Brown] by Alston" by calling Alston's employer. Dkt.

22

No. 1, ¶¶ 64, 68. But in his response, Alston alleged a new reason that Brown allegedly retaliated against Alston: "for his conduct at the scene of the traffic stop." Dkt. No. 29 p. 23. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint" in accordance with the Federal Rules of Civil Procedure. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Alston cannot now retroactively amend his complaint to state that Brown retaliated against him for his behavior at the traffic stop rather than on the basis of Alston lodging formal complaints with Brown's employer.

The Court therefore examines only those reasons for retaliation pled in the Complaint. Examining whether Brown retaliated against Alston on the basis of Alston's formal complaint against Brown, Alston's contention does not succeed. Brown contacted Alston's employer *before* Alston lodged a complaint against Brown. As such, Alston fails to carry his burden as to the second prong.

Alston is also unable to show a causal connection between his complaint about Brown and Brown contacting Alston's employer. Alston testified that Brown told him at the time of his arrest that Brown would contact his employer. Dkt. No. 22-4, 54:14-17, 55:3-4. Brown also testified that he planned to contact Alston's employer about Alston's conduct during the

arrest without regard to whether or not Alston lodged a complaint against him. Dkt. No. 22-5, 58:1-25, 59:1-24, 60:1-7. Plaintiff is therefore unable to show that his subsequent complaints about Brown were the "motivating factor behind" Brown's prior decision to call Alston's employer. Abella v. Simon, 482 Fed. Appx. 522, 523 (11th Cir. 2012). Because Alston does not succeed in proving the second or third elements of the retaliation claim, he is unable to prove that Officer Brown retaliated against him on the basis of protected speech.

The Court now turns to Alston's claims against Chief Howard. Alston's claims that Chief Howard engaged in "chilling speech by intimidation" and his claim of "denial of petition for redress of grievances" both alleged that Chief Howard refused to investigate Alston's complaints against Officer Brown and threatened to cause problems for Alston if Alston continued to pursue those complaints. Dkt. No. 1. ¶¶ 56-63, 93-102. But the evidence, including Alston's affidavit, does not indicate that Howard engaged in any threats. Rather, it demonstrates that Howard explained that Brown and Alston's testimony would be weighed against one another if Alston brought suit. Dkt. No. 22-4. 44: 10-24. Nor does Alston's testimony show that Howard refused to look into Alston's complaint against Brown; instead, it shows that Howard affirmatively contacted Alston to discuss

AO 72A
(Rev. 8/82)

his informal complaint and ask for his signature on the allegations. Dkt. No. 22-7, 24:20-25:17.

Though the Court finds that Officer Brown and Howard did not violate Plaintiff's First Amendment rights, even if they did, they would be entitled to qualified immunity. Neither Brown's call to Alston's employer to report Alston's conduct during the traffic stop nor Howard's requirement that a sworn statement be provided in order to initiate an investigation for officer misconduct has been established as conduct that violates clearly established First Amendment rights.

Defendants' motion for summary judgment on all First Amendment claims is granted. The Court now turns to Alston's claims against the City of Darien.

**C. Alston's claims against the City of Darien do not succeed.**

A municipality may only be held liable under Section 1983 for acts of one of its officers if the plaintiff can establish that an official local government custom or policy was the "moving force" behind the deprivation of a constitutional right. Bd. of Cty. Commm'rs v. Brown, 520 U.S. 397, 404 (1997). A city is therefore "liable under § 1983 only for acts for which [the city] is actually responsible." Turquitt v. Jefferson Cty., 137 F.3d 1285, 1287 (11th Cir. 1998). Here, for the City of Darien to be responsible for Officer Brown and Chief Howards' actions,

Plaintiff must "identify a municipal 'policy' or 'custom' that caused his injury." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

Plaintiff claims that the city (1) "maintain[s] a vague and ambiguous use of force policy which fails to provide clear guidance as to the definition of excessive force," (2) that the city "ha[s] a policy . . . of ratifying police misconduct," and (3) that the city fails "to conduct thorough, objective, and uniform investigations and evaluations of officer misconduct and incidents involving the use of excessive force." Dkt. No. 1. ¶¶ 109, 110. The Court looks to whether there is evidence of an official policy, an informal custom or practice, or else a failure to train or supervise that amounts to the basis of Section 1983 liability. It finds that there is not.

First, a city may be liable under Section 1983 for their employee's violation of another's constitutional rights where the city follows an official or unofficial policy of constitutional violations. In the Eleventh Circuit, a party may establish that such a policy exists by proving either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through repeated acts of a final policymaker for the county." Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003). Alston has failed to produce any evidence that the City has an official policy of "ratifying

AO 72A
(Rev. 8/82)

police misconduct," and as such, has failed to carry his burden of demonstrating evidence of an official policy.

In the absence of an official policy, this Court looks for evidence of an unofficial custom or practice. A plaintiff may establish an unofficial policy exists when he demonstrates "a widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991). Liability may then attach to the municipality because the unofficial practice is "deemed authorized by the policymaking officials because they must have known about it but failed to stop it." Grech, 335 F.3d at 1330 n. 6.

In his complaint, Plaintiff alleges that the City of Darien has the custom or practice of "ratifying police misconduct" and of "failing to conduct thorough, objective, and uniform investigations and evaluations of officer misconduct and incidents involving the use of excessive force." Dkt. No. 1. ¶¶ 109, 110. But discovery has shown these allegations to be unsubstantiated. In fact, the record does not contain evidence of a single instance in which the City either ratified police misconduct or failed to conduct proper investigations or evaluations of officers' use of excessive force. Plaintiff therefore failed to meet his burden of proof. See Denno v. School Bd. of Volusia Cnty., Fla., 218 F.3d 1267, 1277 (11th

AO 72A
(Rev. 8/82)

Cir. 2000) (holding that evidence of three violations in a short period of time was not sufficient to establish custom or policy). Because Plaintiff has not identified a single instance that could, cumulatively, constitute a widespread practice of misconduct, he has failed to meet his burden.

Finally, inadequate training of law enforcement may serve as a third basis of liability under Section 1983 when failure to train amounts to deliberate indifference to the rights of persons with whom officers come into contact. Gold, 151 F.3d 1346, 1350-51 (11th Cir. 1998). To show "deliberate indifference," a plaintiff must present some evidence that the City of Darien was aware of a need to train or supervise in a particular area based on "a history of widespread prior abuse" yet "made a deliberate choice not to take any action." Gold, 151 F.3d at 1350. As held above, because Alston has not presented evidence of the "history of widespread prior abuse" required to demonstrate that the City of Darien was on notice that there was a need for training, he has failed to meet his burden of proof.

Having failed to demonstrate evidence of an official policy, an unofficial policy, or a failure to train, Alston's claims against the City of Darien cannot succeed. As such, Defendant's motion for summary judgment on these claims is granted.

### CONCLUSION

For the reasons set forth above, Plaintiff's motion for partial summary judgment (Dkt. No. 23) is **DENIED** and Defendant's motion for summary judgment (Dkt. No. 22) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment and to close this case.

**SO ORDERED**, this 17th day of November, 2017.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)